IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 1, 2016

## JOSUE SEGURA v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 07-00667      John W. Campbell, Judge**

_____

### No. W2015-00929-CCA-R3-PC  -  Filed July 26, 2016

_____

Petitioner, Josue Segura, appeals the denial of his petition for post-conviction relief, arguing that the trial court erred in finding that he received effective assistance of counsel.  Following a thorough review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Randal G. Rhea, Memphis, Tennessee, for the appellant, Josue Segura.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Lessie Rainey, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

## I.      Background

Petitioner was convicted by a Shelby County Criminal Court jury of first degree murder and sentenced to life imprisonment.  His convictions were affirmed by this Court on direct appeal, and our supreme court denied his application for permission to appeal.  See State v. Josue Segura, No. W2010-00952-CCA-R3-CD, 2012 WL 4078910, at *1 (Tenn. Crim. App. Sept. 18, 2012), perm. app. denied (Tenn. Feb. 13, 2013).  Our direct appeal opinion provides the following overview of the crime:

> On May 27, 2006, the body of Daniel Darby, the victim, was found
> in a rut in an area of Memphis known as "Frayser bottoms."  The victim's

skull had been crushed as a result of five to seven blows to his head with a blunt object. [Petitioner] was the last person to be seen with the victim. Two days after the victim's body was found, [Petitioner] told authorities that he struck the victim seven times with a lead pipe in self-defense.

Id.

In his trial testimony, Petitioner related that he and the victim had been drinking, using drugs, and recreating with two female companions at the Loosahatchie River when the victim's vehicle became mired in the mud. Id. at *11. He said the two women called a friend, who came and picked up the women, while he and the victim remained behind at the river bottoms attempting to extricate the vehicle. Id. at *11-12. According to Petitioner, as they worked to free the vehicle, the victim became angry, repeatedly cursed him, and eventually struck him with his fists. Id. at *12. Petitioner claimed he was afraid of the victim and when the victim swung at him again, he hit the victim with a metal pipe that had been lying on the passenger side floorboard of the vehicle. Petitioner said he struck the victim six or seven times with the pipe because the victim grabbed hold of Petitioner's pants and would not let him go. Id.

On October 3, 2013, Petitioner filed a *pro se* petition for post-conviction relief in which he raised a number of claims, including ineffective assistance of counsel. Following the appointment of counsel, he filed an amended petition which incorporated the claims in his *pro se* petition and included additional allegations of ineffective assistance of counsel. Although Petitioner alleged several instances of ineffective assistance of counsel in his original and amended petitions, on appeal he argues only that counsel was ineffective for failing to request a jury instruction on voluntary intoxication to negate Petitioner's culpable mental state. We will, thus, summarize only those portions of the evidentiary hearing that are pertinent to that issue.

Trial counsel testified that some time before trial, he substituted as counsel for the public defender's office, which was Petitioner's original counsel in the case. Petitioner had a seventeen-year offer from the State at the time counsel began his representation, but counsel was able to eventually negotiate either a fourteen- or fifteen-year offer. Petitioner, however, rejected the offer because he wanted to take the case to trial.

Trial counsel testified that Petitioner told him that he was drinking and smoking crack cocaine on the day of the crime and that the trial witnesses and discovery confirmed Petitioner's account of his drug usage. Petitioner, however, "always tried to downplay his drug use[.]" Trial counsel acknowledged he concentrated at trial on a self-defense argument and testified that, while the issue of Petitioner's intoxication came out in his defense proof, he was "not really sure if [he] really focused on it." Counsel

explained that he made a strategic decision to base his defense on self-defense, testifying that he did not want to "rub the jury the wrong way" by trying to excuse Petitioner's behavior by his drug and alcohol use.

Trial counsel additionally testified that Petitioner consistently maintained that he acted in self-defense, and, although he mentioned having smoked crack cocaine and having drunk alcohol with the women, he also said that he was swimming during that time, which, counsel indicated, suggested to him that Petitioner was not that intoxicated. Moreover, the proof was that "some hours had passed" from when the women left and when the victim was killed, during which time Petitioner and the victim were trying to extricate the vehicle. Counsel agreed that intoxication could "remove mens rea for first degree murder" and that the jury was not given any instruction on intoxication.

On cross-examination, trial counsel testified that he had tried twenty to thirty murder cases by the time he represented Petitioner and that he was successful in all but one of those cases in either achieving a not guilty verdict or a guilty verdict on a lesser included charge. In Petitioner's case, Petitioner was adamant that he had acted in self-defense when he struck the victim. Counsel said he explained to Petitioner that his large size relative to the under-100-pound victim, and the fact that the victim was unarmed, could present a problem with his claim of self-defense, but Petitioner "was adamant that was what happened and that he wanted to testify and tell how he defended himself against [the victim]."

Upon questioning by the post-conviction court, trial counsel testified that both of Petitioner's statements to police were consistent with his trial testimony that he acted in self-defense. He also confirmed that Petitioner's motion to suppress the statements had already been denied by the trial court before trial counsel began his representation. Counsel said that Petitioner never indicated that he did not remember what had happened with the victim; to the contrary, Petitioner "was very firm and very solid on what happened" and was always adamant that he acted in self-defense.

Petitioner's original trial counsel testified that she based her motion to suppress the statements on the fact that Petitioner was a non-native English speaker. Upon questioning by the post-conviction court, she testified that Petitioner talked to her of having acted in self-defense and that self-defense would have been the primary defense had she tried the case. She said Petitioner told her he had been drinking and said that some of the others were using cocaine, but they did not share it with him. She could not recall Petitioner's having ever said that he was "highly intoxicated," and Petitioner expressed no difficulty recalling the events of that day.

Petitioner testified that he was drinking and smoking crack cocaine throughout the time he was recreating at the river bottoms and that he was "high and intoxicated" that evening. He could not, however, recall if he informed either of his counsel of that fact.

Petitioner's appellate counsel testified that the petitioner's statements to police were consistent with his trial testimony.

On April 17, 2015, the post-conviction court entered a detailed written order denying the petition for post-conviction relief. Among other things, the court accredited trial counsel's testimony while finding not credible Petitioner's "weak testimony that he was intoxicated" and had wanted to use an intoxication defense. With respect to Petitioner's claim that counsel was ineffective for not presenting an intoxication defense, the court specifically found that Petitioner "downplayed any intoxication on his part and did not give [trial counsel] any information that would have justified using the intoxication defense." The court, therefore, concluded that Petitioner failed to establish that "counsel was ineffective for not pursuing an intoxication defense."

## II.    Analysis

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn. Code Ann. § 40-30-103. The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. Id. § 40-30-110(f). Upon our review, the trial judge's findings of fact are given the effect and weight of a jury verdict, and this Court is "bound by the trial judge's findings of fact unless we conclude that the evidence contained in the record preponderates against the judgment entered in the cause." Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). Thus, this Court will not reweigh or reevaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial court judge, not the appellate courts. Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999); Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). A trial court's conclusions of law, however, are subject to a purely *de novo* review by this Court, with no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457 (Tenn. 2001).

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. State v. White, 114 S.W.3d 469, 475 (Tenn. 2003); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Melson, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. Baxter, 523 S.W. 2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (citing Strickland, 466 U.S. at 688).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. Strickland, 466 U.S. at 690; State v. Mitchell, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. Strickland, 466 U.S. at 690; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462.

We conclude that the post-conviction court properly denied the petition for post-conviction relief. Trial counsel's testimony, which was accredited by the post-conviction court, was that Petitioner consistently downplayed his alcohol and drug usage and maintained throughout that he acted in self-defense. Petitioner, himself, could not recall whether he ever informed counsel that he was intoxicated at the time of the murder. In addition, the proof established that a significant amount of time elapsed between Petitioner's drug and alcohol use and the murder. In sum, Petitioner failed to meet his burden of showing that counsel was deficient for not pursuing an intoxication defense and not requesting a jury instruction on intoxication. Accordingly, we affirm the judgment of the post-conviction court denying the petition.

5

## CONCLUSION

Having carefully reviewed the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____

THOMAS T. WOODALL, PRESIDING JUDGE